Oh second With the lawyers who are going to argue, please approach the bench and introduce yourself. Good morning, Your Honor. Dave Mangian with Constant Covert on behalf of Fifth Third Bank. Good morning, Your Honor. I'm Chris Williams on behalf of Cook Island Public Party and Robert Harris. Are you going to reserve some time? Yes, five minutes, Your Honor. Okay, let's proceed. Thank you. May it please the court, counsel. We're asking for reversal and remand. This case was decided prematurely on a number of different levels, a number of different questions that should be decided by the trier of fact or, in fact, decided prematurely. Well, what's your cause of action here? There's five counts that are involved here. There's fraudulence. Some of these counts you did not replete, so they're waived. The first complaint had five counts. The second complaint had the contract counts, had two counts. We did not reference those. If you didn't reference them, they're gone. Well, our argument on that, Your Honor, is that because the trial court essentially specifically said that our contract claims could proceed. Based on Justice Gordon's question, they were dismissed with prejudice and there was no objection to those counts being removed from the complaint, knowing that when the complaint was amended, as Justice Gordon just mentioned, they weren't replete, so they're gone. Well, our argument on that is that the trial court said specifically the breach of contract issue can proceed and it also said I do want to get through this pleading phase before I set any more discovery deadlines. So basically what I'm arguing essentially is that this court should have jurisdiction over those three claims sort of in an equitable sense. Well, what case is that? There is no case. There is no case. But the trial court did really say if you specifically replete these paragraphs in your contract counts, then we can proceed. But they weren't replete, were they? No. The contract counts were. When the trial court dismissed the three counts in the first complaint, it said if you replete these specific paragraphs, your contract claims can proceed and implied very heavily that we're going to move on to discovery, et cetera, et cetera. And because the trial court said that we were good on our contract claims, we didn't replete the first two claims. So what is a contract? Is there a contract? There's absolutely a contract. The bank argues strenuously that – well, they argue both positions, that there was and there wasn't. But there was a contract between Betty Hobko and the bank and that was formed through her agent at the time. But the contract was breached, essentially. Go back to Betty. Okay. Betty didn't go to the bank. She didn't sign the forms. She didn't know about the accounts and their existence. Correct. So how did the bank and Betty enter into a contract? Through a valid agent. Through a valid agent? Yeah. Well, here's the problem that you have with the agency. It would appear that the sister here exceeded her authority. She had no authority to set up this account. Well, what we argue, Your Honor, is that Shirley Jones, the sister, had authority to set up bank accounts but not a joint tenancy bank account. So the contract was formed with the bank and really it was kind of simultaneously breached. Wait, wait, wait. In order to have a contract, there has to be a meeting of the minds, okay? Yes. And all the provisions have to be there. Now, if there was no authority, as you say, to set up this joint account, then there can't be a contract. There was authority to set up bank accounts. But not this type of a bank account. So tell me, what case are you relying on that gives you the authority to do that? See, we just follow the law here. This is what we're supposed to do. You're supposed to show me the case that gives you the right to argue that. Where is the case? What case is that? There isn't any. This is an extremely unique fact pattern, Your Honor. All cases are very extremely unique based on their particular set of facts. But they have to be supported by the law. I don't know where your law is to support your argument. Well, I do refer to the restatement in my brief, which is really obviously not binding precedent. But what I talk about is that in the restatement of agency, they talk about when an agent and a third party are involved with a type of fraud against the principal, if that's a possibility. So essentially what we're saying is that even though at some point Shirley Jones developed an intent to breach her fiduciary duty, at the time that the accounts were opened, she had the authority to open a bank account. Did the power of attorney authorize her to sign these cards? Was she authorized under the power of attorney to sign these bank cards? No. I'd say no. She was authorized to make a number of financial – it was a broad power of attorney, but she was not authorized to sign her name on a joint account because that creates a presumption of fraud. And really, this case centers on that fact. And one of the cases cited by the bank, the State of Keel, talks about that specifically, that if a joint account is opened after a fiduciary relationship is established, then the presumption is fraud. So she had the authority to open a bank account. A contract was formed. But by opening the joint account, by the bank allowing her to open a joint account, they created this closed loop so that Betty Hufford could never know about it. She couldn't even sign checks. Are you arguing that the damage to Betty here isn't necessarily signing the cards but withdrawing the funds? Well, that's what happened. That's what I'm asking you. Is that what you're asserting here? Is that the damage really wasn't Shirley signing these cards and setting up these accounts, but in fact it was withdrawing the funds without Betty's knowledge? The damages are both. I mean, the bank's conduct led to the damages. I mean, Shirley stole the money. Shirley took the money. She depleted the accounts. But what we're saying is when she created a presumption, the bank created the joint accounts and that created a presumption of fraud, an obvious presumption of fraud. And basically the bank had an astonishing breach of its duty of ordinary care. You know, that's very interesting. Tell me, how would the bank know anything about this? Well, the bank's policies instruct anybody opening an account on the difference between a joint account and a power of attorney account. That's number one. I mean, what should the bank have done? Let's assume, you know, that they have a duty to use reasonable care. What should they have done here? Somebody comes in and they open up a joint account and they have money. The bank opens it up. But what should they do? How could they have ever found out the circumstances? What they should have done is followed the law and the procedures of every bank in opening a joint account and get the signature card of both joint owners. They didn't do that. The problem here is that they created a closed loop that Betty was completely out of. And by setting up that joint account, it convinced Shirley Jones, as she testified to, or what her statement was, that all of a sudden it's my money too. So I don't know when she developed this intent to take all the money, but that's what happened. It looks from the facts that Betty had cards and it was Shirley who forged her name on them. Shirley signed Betty's name and her own name. How would the bank know that? Because that's how the bank set it up. I mean, Shirley went into the bank. So the bank was aware that Shirley was signing Betty's name? Oh, absolutely, yes. And, of course, there was a power of attorney that gave her the right to do that, wasn't there? No, the power of attorney did not give her the right to do that because it's an obvious presumption of fraud that arises when a joint account is opened by a fiduciary. That's the key here. The key here is the type of the account, a joint account. I mean, what case holds that? I mean, where is there a law that says these things? Well, specifically for the presumption of fraud that's created. Where is there some support for what your argument is? Well, in Ray's statement here, it says specifically that when a fiduciary opens a joint account, after they become a fiduciary, a presumption of fraud exists. If it's a fiduciary opening a joint account, if a fiduciary had a joint account before becoming a fiduciary, and then a power of attorney is executed, you get a presumption of donative intent, and these two presumptions fight each other. But when the fiduciary opens joint accounts after the fiduciary becomes a fiduciary, the presumption of fraud arises, and that's in the state of Teal. This is definitely supported. Shouldn't the Fiduciary Obligations Act here serve to shield the bank from any liability? Well, absolutely not because we're not arguing that the bank had actual knowledge of what Shirley was going to do, but we are arguing that it was commercially unjustifiable and bad faith to allow a fiduciary to open a joint account in a way that completely excluded the principal. So the Fiduciary Obligations Act, the bank argued it strongly. The trial court actually said, you lose on that, the bank facilitated the fraud. That's what the trial court said. The bank facilitated the fraud, and the trial court was right on that point. What about Betty? Does she have any responsibility here? Should she have gotten someone who was honest and responsible to act as her power of attorney? Well, she thought that she did. I mean, it was her twin sister, but Betty, as the court knows, has a long history of mental illness, and we're not claiming that she lacked capacity to enter into contracts or to execute a power of attorney, but yes, I mean, a person has some duty to choose their agents wisely, but the agent has a duty for the principal, obviously, too. And with regards to her competency, do we have any statute of limitations problems here? No, the trial court ruled on that and said the statute of limitations was not a bar, and that's not argued on appeal. It's because of Betty's competency, but really, it's also, I mean, the Uniform Commercial Code says a bank customer has a duty to inform the bank of fraud, and by creating a closed loop, how could Betty know? How could she have any idea what had happened? And the provision of the power of attorney that says that these things can happen without notice, that doesn't cancel out the fiduciary duty. So the key here is that a joint tenancy was created, and that created a presumption of fraud, and the bank should have known that. That's in their internal policies. But the bottom line is there's a great deal of discovery left that we should be entitled to, and this was a case that was decided prematurely. And at the summary judgment phase, we could be at a different posture, but on the pleadings, prematurely, under the rules of 2-615. So. You want to save some time? Yes, thank you, Your Honor. It is the court. Your Honors, this case is about, and counsel has said this, is about them trying to hold the bank liable for opening a joint account. At the end of the day, that's the basis of their claims. And he's arguing that it was premature and we need to get to summary judgment because we need to have discovery. Well, the rules require him to state a claim, the elements of his claim, or claims, until we get to that point. And he admitted to you all that he can't state those elements. He admitted that it's his position and his argument that she didn't have, Ms. Jones did not have, authority under the power of attorney to open an account or sign these signature cards. So, Your Honor. So we don't have a contract with her? That's, based on his position, that is what the law would say, Your Honor. And if there's no contract, then you can't have a breach of contract claim, you can't have this intended third-party beneficiary claim, because if she was outside of her authority, then she can't be intending to benefit her third party. There's no duty of her ordinary care. The law says that arises from the contract between a bank and its customer. But if you take that on the flip side. And then, so going back to the pleading stage, the three counts that were dismissed, that were not included in the Second Amendment complaint, are those wrong? Your Honor, I think that they are. He hasn't provided any support for why he's able to appeal those after repleting and not including them in another complaint. And even if they were gone, they fail for numerous reasons that we discussed in our briefs, and I'll get to here. Was there any count for negligence? There was no count for negligence in either the First Amendment complaint or the Second Amendment complaint. The claims have been negligent misrep, fraudulent misrep, breach of ordinary care, breach of contract, and breach of contract intended third-party beneficiary. So even if there were a claim for negligence, our argument is that the fiduciary obligations act as a complete bar to any claims here. With regard to that, going back to the contract claims for a minute, even if there was a contract, and he's now arguing strenuously that there was, despite saying in his verified pleadings that the signatures were forged and there's no authority, the contracts would have explicitly barred the claims here. It would be a joint tenancy account, and the terms of our deposit agreement state explicitly that the bank has no liability when one joint tenant withdraws money from the other, and that's a very bedrock principle of commercial law. It's in a statute, actually, in the Joint Tenancy Act. What about the arguments that the bank should have taken steps to ensure that Shirley was actually authorized to open up a joint account, but Betty wasn't there when the joint account was open and wasn't in the presence of any of the bank officers when the cards were signed? Sure, Your Honor. The power of attorney in this case is what gives the bank authority to do anything that it did in opening these accounts. The power of attorney grants broad powers for Ms. Jones to act in any manner that Ms. Hubka could act as if Ms. Hubka was standing in the bank on the day the accounts were opened. She can sign her name. She can open bank accounts. She can now do financial institution transactions. All of these things, the bank is entitled to rely on that legal authority because it was a notarized power of attorney that had witnesses, and that's a legal document that the bank can rely on in taking actions in opening accounts. I think the big issue for us is that one of the big issues is the Fiduciary Obligations Act, and Your Honor sit directly on that. Section 9 relieves banks of liabilities in exactly this situation, where money from a principal is even endorsed by a fiduciary and placed into a fiduciary's personal account. Now, the only exceptions to that are actual knowledge, which the guardian's counsel admitted to you all that he's not seeking that. He's not saying the bank had actual knowledge. And the other exception is bad faith, and here the way that they're saying they get to bad faith is through this alleged presumption of fraud.  when a fiduciary uses his or her fiduciary powers to open a bank account or self-deal. The Fiduciary Obligations Act, however, is a statutory enactment that takes that presumption away in the situation where you have a bank dealing with a fiduciary honestly. If the presumption of fraud, that's a common law doctrine, were an all-time exception to the Fiduciary Obligations Act and created bad faith in every circumstance, there simply wouldn't be a Fiduciary Obligations Act. And we can't assume, or we have to assume, that the legislature was aware of this common law duty when it passed an act of the statute, which goes back, I believe, to 1931. So this falls directly into the Fiduciary Obligations Act wheelhouse and bars the claims. And the Fiduciary Obligations Act, the law says, is a complete bar to all the claims for contract, either as claims. On the issue of the individual claims, because I think it's important, the guardian's originals is a premature dismissal, mostly because of the scope of the authority issue or able to enter into contracts under the power of attorney. But even if the court were to accept his argument on the premature nature of the court's ruling, which we don't think is correct based on his verified pleadings, because there's numerous other reasons why he has not met the outlook, he has not pled the elements of each of his claims. The misrepresentation claims are all premised on Fifth Third allegedly allowing Ms. Jones to open these accounts. That's common. You don't make the argument that you're, in fact, in some instances, you're violating your own internal procedures, like, for example, the photo ID. There was no photo ID presented when the account was opened, and yet your internal procedures require one. Your Honor, the bank's internal procedures and policies don't create any type of duty under their law or standard of care. And in this case, the bank was acting and listening to and following the instructions of a power of attorney who, under Illinois law, is explicitly allowed to do the acts by which Ms. Hupka did. So in this case, it is as if the bank was talking to Ms. Hupka. Notice to the agent is notice to the principal when acting within the scope. And so that the policies and procedures, even if followed, what he is essentially saying is if you corrupted Ms. Hupka's address and ID, that's somehow going to give you knowledge or a reason to suspect that Ms. Jones, at this time, while opening these accounts, is somehow acting outside the scope of her authority. And this is the question that the power of attorney indicated it would terminate upon Betty's death. At the time when the accounts are open, she's not there. So how do we know whether she's alive or she's dead? If that provided an exception, Your Honor, then the power of attorney could never be used because it would require anyone accepting a power of attorney to independently investigate whether the person is alive or dead. And I think the bank is allowed to rely on the power of attorney as a legal document and doesn't have an independent duty to seek out records, especially this bank branches in Brazil and Indiana, to seek out death records or determine if a principal is alive. If that was the case, then power of attorneys would have no value under the law because they'd be questionable in every circumstance. So to the misrepresentation claims, I think he's already agreed that those are not in federal court. He doesn't have any authority for how they are. And to the extent they are, he hasn't met the elements. There's no misrepresentation. And what he is actually arguing is that we made a misrepresentation of law, and a misrepresentation of law is not actionable in Illinois. Further, and I think Your Honor has pointed this out, there's a big issue here with whether or not victims' conduct created the loss. Here, his allegation is the loss was created by Ms. Jones 10 months after these accounts were opened. There's nothing reasonably foreseeable for the bank at the time these accounts were opened that Ms. Jones is going to take the action that she did. Now, the Mormon doctrine would also bar the negligent misrep claim because victims are not in the business of supplying information to non-customer fiduciaries as to what type of accounts they can and can't open under the law. That's legal advice. And his allegation that we are is simply a legal conclusion that the courts have said you have to separate by what blood facts, which he doesn't have here. Just to make sure, so does the Fiduciary Obligations Act apply here? Yes, Your Honor. The Fiduciary Obligations Act would apply and bar all of the claims. Section 9 is explicitly set forth for this situation, and he's offered absolutely no factual allegations to get to the bad faith exception. The bad faith exception requires both that the bank suspected the wrongdoing and that the bank deliberately refrained from investigating that wrongdoing. There's no allegations that either of those things occurred here. It's a straightforward application, Your Honor, that bars all the claims. So the breach of ordinary care only arises in a contract situation, and he's alleging in paragraphs 84 and 86 of this complaint that the breach resulted when the accounts were opened. And you can't, as Your Honor pointed out earlier, I believe this, Judge Gordon said you can't breach a duty without having a contract first. And here it's a contractual duty. It didn't exist at the time the accounts were being opened. And anyway, it only applies to disbursement of funds, which wasn't alleged. So at the end of the day, it's certainly, you know, Ms. Hopka and Ms. Jones's relationship is between them, and Ms. Jones is the wrongdoer here, obviously. They admitted that, saying that she's the one who caused the loss. Nothing about these accounts being joint accounts or being opened by the bank as joint accounts caused any loss here or resulted in any harm. It can't be the law that the bank opening a joint account somehow deems a power of attorney or a fiduciary and tells that person that they can then go out and breach their duties or break the law. And for those reasons, and the others discussing, I believe we respectfully request that you affirm this or, of course, dismiss it as prejudice. And I decline. Thank you, Your Honors. Thank you. Your Honors, I'd certainly disagree respectfully with counsel that the public guardian has admitted that there's no contract. We said, I argued specifically that there was a contract to open bank accounts. The type and the manner in which it was done was the breach. And, again, under the bank's analysis, essentially what it is saying is that as long as it has the POA in front of it, it can do anything it wants. It can create a joint account with two signatures and not having the signature of one of the joint owners. But they're arguing that the POA that was in front of them appeared for all intents and purposes to be a valid power of attorney. It did appear to be a valid power of attorney, but it did not give the bank the authority to allow Shirley to open joint accounts because, again, Betty could not even sign checks on this supposedly joint account. Imagine if Betty went into the bank to try to find out about it, for example, and went into the bank to try to close the account. How would the bank even know who she was? The bank didn't have her ID. They never verified her address. And we would very much like to depose the person who wrote the affidavit that was attached to their motion to dismiss and ask them if recognized banking practices involve creating joint accounts without two signatures, violating the Patriot Act, even though there's no private cause of action under the Patriot Act, creating a closed loop where the principal, they have no idea that these accounts had been opened. Even the bank's instructions, internal instructions, which we would argue are conventional banking practices, say that when a power of attorney account is open, you compare the signature on the power of attorney to the signature card. So the duty of care, and there was a contract here, the duty of care was that they never got a signature from Betty. I mean, a fiduciary... But what difference would it make when Shirley took all the money? That's what it's all about. Shirley took the money. So what difference, if they would have got the signature from Betty, would that have changed anything? Well, certainly it could have, of course, because she would have, then Betty would have known that there was a joint account being opened and would have been able to monitor it and monitor her actions. And certainly, I mean, the liability here is shared. I mean, the bank and... Let's assume for the sake of argument that we write this case the way you're arguing it. From this point forward, would any bank ever open up an account under a power of attorney again? Of course, but they would... They would have to investigate every single situation to the point where it would be financially prohibited for them to do it. I would respectfully disagree. All they need to do is get a signature, and that's what a joint tenancy is. I mean, all they would need to do would get a signature from Betty, a real signature. And that's what all banks do. That's conventional banking practice. We're just asking that banks follow... Betty was a disabled person. Did she have Alzheimer's disease? Well, when the accounts were opened, she was... It's not clear what her capacity was. We don't know. She didn't have Alzheimer's. She has a long history of mental illness. Something of that nature where her mind was disabled? Wasn't that the case? Well, eventually she was adjudicated disabled. At the time the accounts were opened, we don't know if she had capacity or not. So... But I think, just to wrap up, Your Honor, all we're asking is that banks follow conventional banking practices, obtain signatures, check IDs, verify addresses, so that they don't create a closed loop that excludes the principal. That's what we're asking. And I don't think if you reversed, it would create any onus for banks. It would not be any extra duty. It would just be we are simply asking that banks follow common sense, internal procedures that are designed to prevent fraud. These procedures are designed to prevent fraud. They disregarded that and fraud ensued. If there's no further questions, I thank the Court for its session. Thank you. All right. We'll take this case under advisement. Thank you very much for your arguments. Very interesting case.